# In re PLAINS MARKETING, L.P. and Darrell E. Cooper.

## No. 09–06–070 CV.

Court of Appeals of Texas, Beaumont.

Submitted May 28, 2006.

Decided June 1, 2006.

Kathleen M. Kennedy, Benckenstein, Norvell & Nathan, LLP, Beaumont, for relators.

Gerald W. Eddins, Eddins & Bennett Law Firm, Beaumont, for real party in interest.

Before GAULTNEY, KREGER and HORTON, JJ.

## OPINION

PER CURIAM.

Relators, Plains Marketing, L.P., and Darrell E. Cooper, request relief from a pretrial discovery order issued by respondent, the Honorable Donald Floyd, presiding judge of the 172nd District Court, Jefferson County, Texas. The underlying lawsuit was filed by real party in interest, Shirley Rawls, for injuries she allegedly received from an automobile collision between Rawls and Darrell E. Cooper, who was employed at the time of the accident with Plains Marketing, L.P., said collision taking place on September 23, 2000. In the course of the litigation, relators retained Dr. Andrew Levine, a retired orthopedic surgeon, to review all of Rawls' medical records from before and after the collision in question. From the records reviewed, Dr. Levine issued three reports, with two reports containing his opinions regarding the cause of Rawls' physical complaints following the collision in question. Rawls subsequently deposed Dr. Levine on January 13, 2006, for approximately four and one-half hours.

During the course of his deposition, Dr. Levine stated that he stopped performing orthopedic surgery "a little over two years ago," and since then his medical practice involved mostly consulting. Because he was doing more office orthopedics and more record reviews, Dr. Levine felt he could not continue to perform surgeries on a regular basis and also be available for depositions or reviewing records. As a result, Dr. Levine stated that he chose to "take my practice in a different direction at that time." After admitting to having worked for the litigation defense firm representing relators fifteen times, Dr. Levine later indicated that he retained his medical evaluation reports in written form from lawsuits in which he was consulted and/or in which he testified at trial. When asked specifically if these reports were on his office computer, Dr. Levine replied that they were not on computer but were "hard copies in boxes, and some are in storage." When Rawls' counsel asked Dr. Levine if he could make copies of these reports, Dr. Levine stated:

> I think that would be very burdensome upon my staff here. I only have one person working and it would be hard to look up all of those and find them. They were generated, you know, at the time they were requested and I wouldn't know right offhand who they are.

■ Following the January 13, 2006, deposition, Rawls' counsel noticed a second deposition of Dr. Levine for February 22, 2006, with a request for production of "hard copies of all reports he has prepared since 1996 in connection with his work as an expert witness in the medical field." Subsequently, relator filed a motion to

quash the second deposition and a motion for a protective order. A hearing was held, during which Rawls' counsel attempted to explain his need for ten years' worth of medical evaluations by Dr. Levine from unrelated litigation:

> [Rawls' Trial Counsel]: And, so, the new rules provide a limited number of means in which to get these type of records. The rule specifically says—192.3(e)(5) specifically states that the bias of a witness is discoverable. The rules of evidence specifically state that it's relevant. So I can get that information. There is case authority that I can get that information.
>
> . . . .
>
> ... He has testified in his deposition that he has winded down his medical practice, that he's probably only got—he only sees about four or five patients a week. He doesn't even have a nurse on schedule; he has a secretary on schedule. He doesn't treat patients any more, except for little old nominal problems. And what he does now for a living is not practice medicine, but practice testifying. He is a professional expert.
>
> . . . .
>
> ... [T]his is a professional witness who has stated that he intends to make his living for the rest of his career out of testifying, and I'm entitled to get those records, Your Honor.

"Mandamus relief is appropriate only if the trial court abused its discretion or violated a legal duty, and there is no adequate remedy at law, such as an appeal." *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex.2004)(orig.proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding)). "A trial court's ruling that requires production beyond what our procedural rules permit is an abuse of discretion." *Id.* (citing *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex.1995)(orig.proceeding)). "If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist." *Id.* (citing *Texaco*, 898 S.W.2d at 815).

Pertinent to the issue before us is the continued viability of the holding in *Russell v. Young*, 452 S.W.2d 434 (Tex.1970), in light of the Supreme Court's subsequent promulgation of TEX.R. CIV. P. 192.3(e)(5), which permits discovery of information regarding an expert witness's bias. In *Russell*, as in the instant case, a party sought wholesale discovery of certain records of a potential medical expert witness who was not a party to the lawsuit. *Russell*, 452 S.W.2d at 435.

To establish bias or prejudice, "an expert medical witness may be cross-examined regarding the number of times he has testified in lawsuits, payments for such testifying and related questions." *Id.* at 436. Furthermore, "[p]roof of bias may be offered to impeach the credibility of a witness." *In re Weir*, 166 S.W.3d 861, 864 (Tex.App.-Beaumont 2005, orig. proceeding) (citing TEX.R. EVID. 613(b)). Nevertheless, TEX.R. CIV. P. 192.3(a) provides that the discovery matter requested must be "relevant to the subject matter of the pending action" and the information sought must appear "reasonably calculated to lead to the discovery of admissible evidence." TEX.R. CIV. P. 192.3(a).

In the instant case, Rawls does not specify what information contained in Dr. Levine's medical examination reports prepared for various unrelated lawsuits would show his bias or prejudice with regard to Rawls or her cause of action against relators. During his deposition, Dr. Levine did not deny that he derived significant income from medical consulting work for litigation defense firms, having worked with relator's counsel's firm alone on four-

teen prior occasions. *See* Tex. R. Evid. 613(b) (Extrinsic evidence of bias is not admissible if the witness "unequivocally admits such bias or interest.").

While *Russell v. Young* was decided in 1970, well before the Court's promulgation of Rule 192.3, the opinion does exhibit a far-sighted perspective, noting that pretrial discovery procedures, although "relatively new" at that time, were "consistently growing in breadth." *Russell*, 452 S.W.2d at 437. Nevertheless, the *Russell* Court was not prepared to authorize pretrial discovery procedures with unlimited scope, as the Court explained.

> There is, however, a limit beyond which pre-trial discovery should not be allowed. It is admitted by Hardware Insurance Company that its attempted pre-trial discovery of relator's records is for impeachment purposes only. Relator has not yet taken the witness stand nor has his deposition been introduced into evidence because there has not yet been a trial; relator's records cannot possibly have impeachment value because there is nothing yet to impeach and there may never be anything to impeach, depending upon the contents of the testimony, if any, which is introduced during the trial of the lawsuit.

*Id.* Although factually distinguishable, the Court later cited Russell with approval in Walker. *See Walker*, 827 S.W.2d at 838–39. Additionally, it appears the Supreme Court did not intend to overrule *Russell* with its promulgation of Rule 192.3(e)(5). The Court's explanatory statement accompanying the 1999 amendments to the Rules of Civil Procedure governing discovery states in pertinent part:

> The notes and comments appended to the rules, unlike most other notes and comments in the Rules of Civil Procedure, are intended to inform their con-

struction and application by both courts and practitioners.

> . . . .

> These revisions recognize the importance of discovery as well as the necessity for reasonable limits. The scope of discovery, always broad, is unchanged.

*Explanatory Statement Accompanying the 1999 Amendments to the Rules of Civil Procedure Governing Discovery*, 977–978 S.W.2d (Tex.Cases) xxxv (Tex. Nov. 9, 1998); *see also In re Weir*, 166 S.W.3d at 865.

▪ In *Walker*, the Court contrasted the requested discovery disapproved in *Russell* with the discovery request made of the medical expert in the Walker litigation:

> The present case is distinguishable. Here, the Walkers presented to the trial court evidence of a specific circumstance—the [University of Texas Health Science] Center's policy restricting the faculty's freedom to testify for plaintiffs—raising the possibility that Dr. Gilstrap is biased. Thus, the Walkers are not engaged in global discovery of the type disapproved in *Russell;* rather, they narrowly seek information regarding the potential bias suggested by the witness' own deposition testimony and that of his professional colleague.

*Walker*, 827 S.W.2d at 838. In the instant case, Rawls' discovery request suffers from the same infirmity as the discovery request in *Russell.* It is not narrowly tailored but is of a global type disapproved in *Russell.* Furthermore, here the discovery requests medical information, possibly confidential, and the expert witness provided the court an affidavit detailing the considerable time and expense involved in responding to the discovery request. The limitations on discovery of information from a non-party expert witness sought solely in an attempt to impeach the potential witness as to his bias or prejudice, as

discussed in *Russell,* are not unreasonable, and appear consistent with the general requirement that the party seeking the information make a showing that it is "relevant to the subject matter of the pending action," and that the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *See* Tex.R. Civ. P. 192.3(a). "The trial court must limit the scope of discovery to protect against unreasonably cumulative or duplicative discovery, and to protect against unnecessary burden or expense." *See In re Weir,* 166 S.W.3d at 864; (citing *In re Sears, Roebuck & Co.,* 146 S.W.3d 328, 332 (Tex.App.-Beaumont 2004, orig. proceeding)). Because the record before us fails to show what information from his medical reports from past unrelated litigation could lead to the discovery of admissible evidence without undue burden or expense, respondent abused his discretion by ordering relator to produce the reports. As relator has no adequate remedy at law, we conditionally grant the requested relief. The writ will issue only if the respondent fails to vacate his order of February 23, 2006, requiring production of the medical reports in question.

WRIT CONDITIONALLY GRANTED.