**In re Christopher MAKRIS, et al.**

No. 04–06–00401–CV.

Court of Appeals of Texas, San Antonio.

Oct. 4, 2006.

Linda C. Breck, Thomas F. Nye, Brin & Brin, P.C., Corpus Christi, Stephen D. Navarro, Frank R. Rivas & Associates, San Antonio, for appellant.

Sean F. O'Neill, Sean T. Beiter, Law Office of Sean F. O'Neill, P.C., San Antonio, for appellee.

Sitting: KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

This is an original mandamus proceeding. The relators, Christopher Makris, American Medical Wholesale, Inc., and A.A.R. Medical—A. Action Rentals, Inc. (collectively, "Makris"), seek relief from a discovery order requiring the production by a non-party expert witness of five categories of personal documents. We hold that the trial court abused its discretion because there was no evidence of bias to support the discovery order. Therefore, we conditionally grant the writ of mandamus, and order the trial court to vacate the order signed June 8, 2006 requiring Dr. Garza–Vale to produce the designated documents. In view of our opinion, it is not necessary to order the trial court to grant Makris' motion for a protective order.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying case is a personal injury lawsuit arising out of an automobile accident in which a vehicle owned by A.A.R. Medical—A. Action Rentals, Inc., and American Medical Wholesale, Inc., and driven by Christopher Makris, struck the vehicle in which the plaintiffs, Florysbel and Yzabel Vazquez, were riding. The focus of this mandamus proceeding is an order signed by the trial court on June 8, 2006, in which Dr. A.R. Garza–Vale, a non-

party expert for Makris, was ordered to produce copies of the following five categories of documents: (1) his personal 1099 Forms for the tax years 2001 through 2005; (2) all medical review reports prepared by Dr. Garza–Vale for the last three years beginning on July 1, 2003; (3) all depositions given by Dr. Garza–Vale for the last three years beginning on July 1, 2003; (4) all correspondence between Dr. Garza–Vale and/or his office and counsel for the relators, Stephen D. Navarro, the law firm of Frank R. Rivas & Associates and any attorney associated with the law firm, Lois Sparkes, Alex Briseno, and/or State Farm Insurance Company, pertaining to any cases in which Dr. Garza–Vale reviewed records, conducted an IME,[2] or gave a deposition during the last three years beginning on July 1, 2003; and (5) all correspondence between Dr. Garza–Vale and any law firm or attorney hired by State Farm Insurance Company to defend a State Farm insured pertaining to any cases in which Dr. Garza–Vale reviewed records, conducted an IME, or gave a deposition for any of their clients during the last three years beginning on July 1, 2003. The real parties in interest (plaintiffs below) sought the designated documents under Texas Rule of Civil Procedure 192.3(e)(5) to show bias on the part of Dr. Garza–Vale. *See* Tex.R. Civ. P. 192.3(e)(5). Production of the documents was requested in a subpoena duces tecum attached to a cross-notice of deposition for Dr. Garza–Vale.

Makris filed objections, arguing that the requested documents are irrelevant and not likely to lead to the discovery of admissible evidence in this lawsuit. Makris also objected that the production request was overly broad, unduly burdensome and harassing in nature. After a hearing, the trial court overruled all of Makris' objec-

tions, except that it sustained the objection to production of Dr. Garza–Vale's entire tax returns and only ordered production of his 1099 Forms. Makris subsequently filed this mandamus proceeding seeking to overturn the court's order. We granted temporary relief and stayed the order. In its mandamus petition, Makris asserts that the trial court's discovery order is not based on any evidence of bias by Dr. Garza–Vale, and is not reasonably tailored to include only relevant material; therefore, it is entitled to mandamus relief.

### ANALYSIS

■ Mandamus relief is appropriate only if the trial court abused its discretion or violated a legal duty, and there is no adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). A trial court's discovery ruling that requires production beyond what our procedural rules permit is an abuse of discretion and may be subject to mandamus relief. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex.2004) (orig. proceeding) (citing *Walker*, 827 S.W.2d at 839). In determining whether a discovery order is an abuse of discretion, we defer to the trial court's factual determinations while reviewing its legal conclusions *de novo*. *In re Doctors' Hosp. of Laredo, Ltd. P'ship*, 2 S.W.3d 504, 506 (Tex.App.-San Antonio 1999, orig. proceeding). The trial court abuses its discretion when it fails to properly apply the law to undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions not supported by the record. *Id.* If an appellate court can not remedy a trial court's discovery error, then an adequate remedy at law does not exist. *In re Dana Corp.*, 138 S.W.3d at 301; *Walker*, 827 S.W.2d at 843 (remedy by appeal is inade-

---

**2.** An "IME" is an independent medical examination.

quate when an order requires the disclosure of information exempt from discovery).

Real parties in interest assert that Makris has not shown the trial court clearly abused its discretion by ordering production of the documents because they showed the documents are relevant to establish Dr. Garza–Vale's bias "as a defense witness." Specifically, they argue they produced evidence that Dr. Garza–Vale "derives a significant portion of his income from his work as a professional defense witness and as such, [they] are entitled to explore any potential bias in favor of his employer." They further contend that Dr. Garza–Vale's denial of any bias in favor of the defense is sufficient to make his financial information relevant to the issue of bias. Finally, the real parties in interest argue that no claim of privilege was raised in the trial court and may not be raised in this court, and the document request is narrowly tailored and not unduly burdensome. In its reply, Makris stresses that it is not claiming the documents are privileged, or that their production is unduly burdensome, in this mandamus proceeding.

█ We do not find the arguments raised by the real parties in interest to be persuasive. The rules of civil procedure initially demand that a request for discovery be "relevant to the subject matter of the pending action," and "reasonably calculated to lead to the discovery of admissible evidence." TEX.R. CIV. P. 192.3(a); *see In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex.2003) (orig. proceeding). Subpart (e) of Rule 192.3 specifically provides that, "[a] party may discover the following information regarding a testifying expert or regarding a consulting expert whose mental impressions or opinions have been reviewed by a testifying expert: ... (5) any bias of the witness...." TEX.R. CIV. P. 192.3(e)(5). We have previously held that Rule 192.3(e)(5) was not intended to overrule the Supreme Court's holding in *Russell v. Young* that personal financial records of a nonparty witness are not discoverable for the sole purpose of showing bias. *See Russell v. Young*, 452 S.W.2d 434, 435 (Tex.1970) (holding a party may not obtain pretrial discovery of personal financial records and appointment books from a nonparty expert witness "whose credibility has not been put in issue and where the records do not relate directly to the subject matter of the pending suit and are sought to be discovered for the sole purpose of impeachment of such witness by showing his bias and prejudice"); *see also In re Doctors' Hosp. of Laredo*, 2 S.W.3d at 507 (holding that new rule 192.3(e)(5) did not overrule *Russell*, and does not permit discovery of personal financial records and appointment books of a nonparty witness to show bias), 508 (Hardberger, C.J., concurring based on trial court's failure to explore other methods of obtaining the information). The Waco Court of Appeals has agreed that Rule 192.3(e)(5) did not overrule *Russell*. *See In re Wharton*, No. 10–04–00315–CV, 2005 WL 1405732, at *3 (Tex.App.-Waco June 15, 2005, orig. proceeding). Therefore, under Rule 192.3(e)(5), in order to obtain discovery of personal documents from a nonparty expert solely for impeachment purposes, the party seeking the documents must first present evidence "raising the possibility that [the expert] is biased." *Id.* (citing *Walker*, 827 S.W.2d at 838).

█ As in *Russell*, it is undisputed here that the documents in question are not material to the subject matter of the pending suit, except as they might be used to impeach Dr. Garza–Vale for bias. *See Russell*, 452 S.W.2d at 435. Thus, the question is whether the real parties in

interest presented any evidence that raises the possibility that Dr. Garza–Vale is biased in favor of the defendants. "To establish bias or prejudice, 'an expert medical witness may be cross-examined regarding the number of times he has testified in lawsuits, payments for such testifying and related questions.'" *In re Plains Marketing, L.P.*, 195 S.W.3d 780, 782 (Tex.App.-Beaumont 2006, orig. proceeding) (quoting *Russell*, 452 S.W.2d at 436). The real parties in interest contend they showed Dr. Garza–Vale's potential for bias through (1) his denial of any bias in favor of defendants,[3] and (2) his deposition testimony in which he admitted deriving a significant portion of his income from medical consulting work for litigation.

▅▅▅ In support of their argument that a denial of bias necessarily raises the possibility of bias, real parties in interest cite two cases in which the experts conceded a bias toward defendants. *See Olinger v. Curry*, 926 S.W.2d 832, 834 (Tex. App.-Fort Worth 1996, orig. proceeding) (medical expert admitted in his deposition that 90% of his expert consultation services had been provided for defendants, as opposed to personal injury plaintiffs, and discovery of expert's tax records was therefore improper as the records were neither relevant nor reasonably calculated to lead to discovery of admissible evidence); *see also In re Weir*, 166 S.W.3d 861, 865 (Tex.App.-Beaumont 2005, orig. proceeding) (expert could not be compelled to testify at deposition about percentage of his income derived from litigation-related work, or total litigation-related income, because he had admitted that he testified almost exclusively for defendants, although

he did not unequivocally admit bias in favor of defendants). In both cases, the plaintiffs' discovery of the defense expert's personal documents for impeachment purposes was held improper due to the experts' admission of a bias in favor of defendants. *See* Tex.R. Evid. 613(b) (stating in relevant part that a witness may be impeached by "proof of circumstances or statements showing bias or interest" of the witness, but extrinsic evidence of bias is not admissible if a witness unequivocally admits bias). We disagree that *Olinger* and *Weir* may be read to support the proposition that a mere denial of bias by an expert constitutes some evidence of the potential for bias and warrants the discovery of the expert's personal documents for impeachment purposes. The basic premise of such reasoning is flawed—the simple denial of bias cannot logically equate to evidence of bias. If that were true, essentially all experts, except those who frankly concede a bias, would be subjected to discovery of their personal documents in a fishing expedition to search for evidence of bias. Permitting such an intrusion into an expert's privacy rights based solely on the expert's denial of bias would likely impact the willingness of reputable experts to testify. *See Olinger*, 926 S.W.2d at 835; *In re Weir*, 166 S.W.3d at 865. The parties' interest in obtaining discovery solely for impeachment must be weighed against the witness's legitimate interest in protecting unrelated private information. *In re Weir*, 166 S.W.3d at 865. Discovery which is unnecessary or unreasonable does not serve the interest of either party in resolving their dispute. *Id.*

In addition to his denial of bias, the real parties in interest point to Dr. Garza–

---

**3.** When Dr. Garza–Vale was asked in his deposition whether he is aware that he is commonly known as a defense witness, he answered, "Well, I've heard that, and yet I have a lot of plaintiff[']s attorneys that call me and I see their patients, so...." Dr. Garza–Vale also testified that he is asked to review records for an injured plaintiff about 15% to 20% of the time.

Vale's deposition testimony that he has given over 90 depositions since January 2004, prepared an expert report for each deposition, and was paid $1,600 on most of the depositions as evidence that a significant portion of his income came from litigation consultation. He stated that he had been involved in three prior cases with counsel for Makris. However, when specifically asked whether the insurer for Makris, State Farm Insurance, had paid him $2 million for IME's during 2002, Dr. Garza–Vale replied that was "baloney." No contrary evidence was offered. Dr. Garza–Vale also testified that he did not know the amount he was paid by defendants for medical reviews and depositions because his income was not segregated on that basis.

We conclude the record contains no evidence that Dr. Garza–Vale is biased in favor of the defendants. At most, his deposition testimony shows that he receives a significant amount of income from litigation consultation. In *Wharton,* the requesting party asserted the expert's potential for bias was shown through his deposition testimony that he received about one-fourth of his income from litigation; however, the court held that no evidence of the expert's bias was presented, and therefore the expert was not required to disclose his personal financial records and expert reports prepared for other cases. *In re Wharton,* 2005 WL 1405732, at *4. A similar situation exists here. The suggestion that Dr. Garza–Vale has a particular bias in favor of defendants was raised by counsel's questions and argument, not by any evidence. *See Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997) (an attorney's unsworn statements are not evidence). Real parties in interest rely on *In re Kemper Lloyds Ins. Co.,* but that case is distinguishable because it did not involve disclosure of a nonparty expert's personal documents, but rather discovery requested from a party. *See In re Kemper Lloyds Ins. Co.,* No. 12–05–00309–CV, 2006 WL 475436, at *2 (Tex.App.-Tyler Feb.28, 2006, orig. proceeding) (distinguishing *Russell* on that basis).

■ We conclude that the trial court abused its discretion in ordering discovery of a nonparty expert witness's personal financial documents, and expert reports and correspondence from other unrelated cases, without first requiring some evidence of the witness's bias. When a discovery order compels production of irrelevant documents, there is no adequate remedy by appeal and mandamus is appropriate. *In re CSX Corp.,* 124 S.W.3d at 153; *Walker,* 827 S.W.2d at 843; *Wharton,* 2005 WL 1405732, at *4 (there is no adequate remedy by appeal for erroneous compelling of disclosure of expert's tax records and expert reports in unrelated cases, "particularly where those reports may contain or refer to the medical records of other patients"). Accordingly, we conditionally grant the writ of mandamus and direct the trial court to vacate its June 8, 2006 order requiring Dr. Garza–Vale to produce the designated documents. The writ will issue only if the trial court fails to vacate the orders within ten days from the date of our opinion and order. The relators' request that we order the trial court to grant their motion for a protective order is denied.